UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

John POPOFF

    *Plaintiff*

    v.

Michael CHERTOFF, Secretary of the United
States Department of Homeland Security;
Michael B. MUKASEY, Attorney General of
the United States, U.S. Department of Justice;
Emilio T. GONZALEZ, Director of the
United States Citizenship and Immigration
Services; UNITED STATES CITIZENSHIP
AND IMMIGRATION SERVICES; Robert S.
MUELLER, Director, FBI; FEDERAL BUREAU OF
INVESTIGATION,

    *Defendants.*

------------------------------------------------------x

08 CV 2385

Docket No.:_____

Judge: _____

Immigration File:
A76 111 217

RECEIVED
MAR 07 2008
U.S.D.C. S.D. N.Y.
CASHIERS

**PLAINTIFF'S COMPLAINT
FOR WRIT IN THE NATURE OF MANDAMUS**

Plaintiff, John Popoff, by and through his undersigned attorneys, commences this action against the above-named Defendants, and states as follows:

1. This action is brought against the Defendants to compel action on an application for lawful permanent resident status properly filed by Plaintiff, John Popoff, based on an approved immigrant petition for alien worker filed on his behalf by his employer, Parsons Brinckerhoff Inc. The application was filed and remains within the jurisdiction of the Defendants, who have improperly withheld action on said application to Plaintiff's detriment.

1

**PARTIES**

2. Plaintiff, John Popoff, is a citizen of Canada. He is currently a resident and domiciliary of Old Lyme, Conecticut. He is employed as the Vice President of Electrical and Mechanical Engineering of Parsons Brinckerhoff Inc., in which capacity he is responsible for managing and directing the mechanical and electrical engineering on large scale transit and infrastructure projects in which Parsons Brinckerhoff Inc. is involved. He has performed a critical role in large scale, ongoing transit projects for clients such as Amtrak, Metro North Railroad, the Long Island Railroad, and other transit and infrastructure systems throughout the country. He has been instrumental in the design and implementation of sophisticated rail systems in the U.S. and abroad. Notably, Mr. Popoff has been involved in the design, engineering and construction of the high speed rail line in Taiwan, which travels at speeds of up to 350 km/hr, and the Northend High Speed Rail Project for Amtrak, which will allow trains to travel at 150 mph on a route between New Haven and Boston. He has had repeated intimate and supervisory involvement in numerous critical infrastructure and transit projects, and has been partly responsible for ensuring the safety of countless rail passengers and crewmen. Mr. Popoff and his family have resided in the U.S. for a number of years through various non-immigrant visas. Mr. Popoff is now the beneficiary of an approved I-140 Immigrant Petition for Alien Worker filed on his behalf by his employer, Parsons Brinckerhoff Inc. He is also the beneficiary of a pending I-485 Application for Adjustment of Status to lawful permanent resident.

3. Defendant, Michael Chertoff, is the Secretary of the United States Department of Homeland Security, with responsibility for the administration of applicable laws and statutes governing immigration and naturalization. He is generally charged with enforcement of the Immigration and Nationality Act, and is further authorized to delegate such powers and authority to subordinate employees of the Department of Homeland Security. More specifically, the Secretary, is responsible for the adjudication of applications for adjustment of status filed pursuant to §245 of the Immigration and Nationality Act (INA), 8 USC §1255.

4. Defendant, Michael B. Mukasey, is Attorney General of the United States, and is the head of the United States Department of Justice, with responsibility for the administration of laws and statutes governing immigration and naturalization and ultimate responsibility for the Federal Bureau of Investigation.

5. Defendant, Emilio T. Gonzalez, is the director of USCIS, and is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services policies and priorities. These functions include: adjudication of immigrant visa petitions and applications for adjustment of status; adjudication of naturalization petitions; adjudication of asylum and refugee applications; adjudications performed at the service centers, and all other adjudications performed by the INS.

6. Defendant, U.S. Citizenship and Immigration Services (formerly, the Immigration and Naturalization Service) is an agency of the federal government within the Department of Homeland Security (formerly, within the U.S. Department of Justice) and is responsible for the administration of laws and statutes governing immigration and naturalization.

7. Defendant, Robert S. Mueller, is the Director of the Federal Bureau of Investigation. He is responsible for conducting criminal record checks and name checks under the National Name Check Program, and other programs, which provides USCIS with information from the FBI database in response to USCIS requests.

8. Defendant, Federal Bureau of Investigation, is an agency of the U.S. Department of Justice charged with conducting certain background checks relating to aliens who are applying for certain benefits under U.S. immigration laws.

## JURISDICTION

9. Jurisdiction in this case is proper under 28 U.S.C. §§1331 and 1361, 5 U.S.C. §701 et. seq., and 28 U.S.C. §2201 et. seq. Relief is requested pursuant to said statutes. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and under 28 U.S.C. §1361, which provides the district court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff." Further, the Declaratory Judgment Act, 28 U.S.C. §2201, provides that: "[i]n a case of actual controversy within its jurisdiction… any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Review is also warranted and relief sought under the Administrative Procedure Act 5 U.S.C. §701 et seq., §706(1) and §555(b).

## VENUE

10. Venue properly lies within the Southern District of New York pursuant to 28 U.S.C. §1391(e), in that this is an action against officers and agencies of the United States in their official capacities, brought in the District where a Defendant in the action resides. Defendants Mukasey, USCIS, Chertoff, Gonzalez, Mueller, and FBI all have offices located at 26 Federal Plaza, New York, New York, in New York County.

## EAJA FEES

11. In connection with the claim for attorneys' fees and costs, under the Equal Access to Justice Act 28 U.S.C. §2412, Plaintiff seeks to recover costs and attorneys' fees incurred in bringing this action. Plaintiff has retained the law firm of Barst & Mukamal, LLP to represent him in this action. Plaintiff is obligated to pay reasonable attorneys' fees and costs incurred in the prosecution of this cause.

## EXHAUSTION OF REMEDIES

12. Plaintiff has exhausted his administrative remedies. Plaintiff has, through his attorneys, made numerous inquiries with defendants concerning the status of his application, all to no avail. No other administrative remedy is available to Plaintiff.

## FACTUAL ALLEGATIONS

13. Plaintiff, John Popoff, is a citizen of Canada. He is currently the beneficiary of a an approved I-140 Immigrant Petition for Alien Worker filed on his behalf by his employer, Parsons Brinckerhoff Inc., and qualifying his as a multinational executive or manager. He is also the beneficiary of a pending I-485 Application for Adjustment of Status to lawful permanent resident.

14. The I-140 petition was filed with Defendants on behalf of Plaintiff concurrently with his I-485 application to adjust status on June 11, 2004, along with all applicable filing fees. An application for employment authorization, including a filing fee, was also filed on that date.

15. Also filed with Plaintiff's I-140 and I-485 were the I-485 applications of Plaintiff's wife and two daughters, who applied for adjustment of status as derivative beneficiaries of Plaintiff's application and petition. Plaintiff's wife and daughters also filed applications for travel documents and employment authorizations with the required filing fees.

16. As derivative applicants, Plaintiff's wife and two daughters cannot adjust status until Plaintiff's application is granted.

17. The I-140 Petition was approved by Defendants on November 16, 2004, making an immigrant visa immediately available to Mr. Popoff and his family.

18. Thus, as of November 16, 2004, Plaintiff was the beneficiary of an approved immigrant petition and had an immigrant visa number immediately available to

4

his, and there was no impediment, other than the processing of his application for adjustment of status by Defendants, to Plaintiff, and his family, receiving permanent resident status as of that date.

19. In March, 2005, Plaintiff and his family were scheduled for, and attended, a biometrics appointment in conjunction with their applications for adjustment of status. Thus, as of that date, Defendants had in their possession and control Plaintiff's fingerprints, photograph, name, date of birth, place of birth and all other biographic information necessary to complete all applicable security checks.

20. Also in March, 2005, Plaintiff and his wife and daughters filed applications to renew their travel documents and employment authorization documents, with the current application fees, which were $180 per applicant for employment authorization and $170 for a travel document. Without these documents, Plaintiff and his family could not work or travel outside the U.S.

21. In March, 2006, Plaintiff and his family again filed applications for employment authorization and travel documents, with the required fees, as their applications for adjustment of status had not been approved.

22. In March, 2007, Plaintiff and his family again filed applications for employment authorization and travel documents, with the required fees, as their applications for adjustment of status had not been approved.

23. On May 12, 2007, Plaintiff and his family appeared again at Defendants' service center and had their fingerprints and biometrics taken, as the previous ones had expired due to the long delay in processing Plaintiff's application.

24. In February of 2008, Plaintiff and his family once again filed applications for employment authorization and travel documents with the required fee. The fee had increased in July 2007, so the fee for employment authorization was now $340, and the fee for a travel document was $305. Plaintiff and his family paid a total of $2,580 in fees in order to renew their employment authorization and travel documents.

25. Plaintiff and his family will be required to renew their travel documents and employment authorization annually until Plaintiff's application is approved if they wish to be able to work in the U.S. or travel outside the U.S. They will continue to have to pay the required fee each year of $2,580 for the family, unless the fee goes up. If it does, they will have to pay more.

26. Plaintiff, through counsel, has made multiple inquiries into the status of his application. Defendants' only response has been to tell Plaintiff his background checks are not yet complete.

27. As of March 4, 2008, Defendant USCIS's publicly posted list of current processing times, indicated that applications such as Plaintiff's which had been filed on July 24, 2006 were currently being processed to completion by Defendants, indicating that Plaintiff's application, which had been filed on June 11, 2004, was already two years and one month behind current processing times.

28. From approximately 1989 to 1999, Mr. Popoff was residing in the U.S. with various non-immigrant visas. During this time, Mr. Popoff was engaged in a critical and sensitive management role in the engineering, design and implementation of multi-state rail, transit and infrastructure projects. These projects inherently affect the safety and livelihood of thousands of Americans on a daily basis.

29. From Approximately 2000 to 2004, Mr. Popoff was employed by his current employer, but working abroad in Taiwan in a similarly sensitive and critical capacity.

30. From 2004 to the present, Mr. Popoff has again resided in the U.S. and has had critical, sensitive managerial roles in many transit and infrastructure projects in several major U.S. cities.

31. Mr. Popoff has held similar positions of responsibility in the transit industry, and also in the engineering, design and construction of industrial power plants, and other infrastructure projects throughout the world.

32. Despite Defendants' assertions that Plaintiff's application for adjustment of status cannot be adjudicated because his security checks are not done, Defendants have allowed Plaintiff to reside in this country and work in a supervisory and sensitive role in many of the nation's public transportation and infrastructure systems for more than 18 years. Thus, it appears that, according to Defendants, Plaintiff is qualified to oversee the engineering and construction of large parts of the North East rail corridor, several of the nation's largest metropolitan area transportation systems, and other critical projects, but is not eligible for adjustment of status because they have not completed his security checks.

33. On information and belief, Plaintiff has no criminal record anywhere in the world and has no history of violations of U.S. Immigration laws.

34. Defendants have sufficient information to determine Plaintiff's eligibility for adjustment of status pursuant to applicable law and regulations. To date, said application has not been adjudicated.

## CLAIMS

35. Defendants' refusal to act in this case is, as a matter of law, arbitrary and not in accordance with the law. Defendants willfully, and unreasonably, have delayed in and have refused to, adjudicate Plaintiff's application, thereby depriving his of the right to a decision on his status and the peace of mind to which Plaintiff is entitled.

36. Plaintiff is, and was at the time of filing and all times since, fully eligible for adjustment of status.

37. Plaintiff has fully complied with all applicable laws, regulations and procedures, and has provided Defendants with all information and documents required or requested in conjunction with his application for adjustment of status.

38. Plaintiff has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law and adjudicate his application.

    a. Plaintiff has been damaged in that his employment authorization is tied to his status as an applicant for permanent residency, and is limited to increments not to exceed one year. 8 CFR §274a.12(c)(9). Therefore, Plaintiff has been forced to repeatedly apply and pay for extensions of employment authorization for himself, his wife, and his two daughters, to the continued inconvenience and harassment of Plaintiff and his employer, which is required by law to continually insure his work eligibility. INA §274A(a)(2), 8 USC §1324a(a)(2).

    b. Plaintiff has been damaged in that his ability to travel is tied to his status as an applicant for permanent residency, and is limited to increments not to exceed one year. Therefore, Plaintiff has been forced to apply and pay for travel documents for himself, his wife, and his two daughters, to the continued inconvenience and harassment of Plaintiff.

    c. Plaintiff has been further damaged by simply being deprived of the status of lawful permanent resident during the pendency of his application.

    d. Plaintiff has also been damaged by his inability to accrue time toward naturalization as U.S. citizen.

    e. Plaintiff has been denied the peace of mind that comes from having a decision made on his application and knowing whether he will in fact be able to remain in the U.S. or whether he will be uprooted and have to relocate on short notice to another country.

39. Plaintiff has a statutory right to the adjudication of his I-485 application pursuant to INA § 245 (8 U.S.C. § 1255).

40. Defendants are required by their own regulations to adjudicate and issue a written decision on Plaintiff's I-485 Application. *See* 8 C.F.R. § 103.2(b)(19); 8 C.F.R. § 245.2(a)(5) (stating an applicant for adjustment "shall" be notified of the decision on that application, indicating that a decision is mandatory); *see also* 8 C.F.R. § 245.6 (stating each applicant for adjustment of status "shall" be interviewed, indicating that every application must be adjudicated). *See Iddir v. INS*, 166 F.Supp. 2D 1250, 1258 (N.D. Ill. 2001).

41. Plaintiff's payment of fees and Defendants' acceptance of those fees for processing Plaintiff's application for adjustment of status represents a *quid pro quo* whereby Defendants are accepting a fee in exchange for providing a service- namely the processing and adjudication of Plaintiff's application.

42. In the process of adjudicating an I-485 application for adjustment of status, Defendants are required to complete the specified security checks.

43. According to a report published by one of Defendants' agencies, the FBI name check is concluded within one month for 94% of applicants, and within six months for 99% of applicants. All other security checks performed in conjunction with Defendants' adjudication of an application or petition generally take less than a month to complete, and some take as little as a day or two. *See* Office of the Inspector General, "A Review of U.S. Citizenship and Immigration Service's Alien Security Checks," November, 2005; USCIS Fact Sheet "Immigration Security Checks- How and Why the Process Works," April 25, 2006.

44. Defendants USCIS and the FBI are administrative agencies subject to 5 U.S.C. § 555(b), which provides "[w]ith due regard for the convenience and necessity of the parties or their representatives and **within a reasonable time**, each agency **shall** proceed to conclude a matter presented to it." (Emphasis added).

45. Completing security checks and adjudicating applications for adjustment of status are purely routine and ministerial duties performed on a daily basis by Defendants.

46. Except under very specific provisions of law that are not applicable here, Defendants lack the legal authority or discretion to abstain from processing applications for adjustment of status or completing security checks.

47. Thus the completion of security checks and adjudication of applications for adjustment of status are clearly subject to the requirements of 5 U.S.C. § 555(b), and Defendants have a legal duty to complete them within a reasonable time.

48. A delay of more than six months in completing the security checks necessary for Plaintiff's application is *per se* unreasonable. A delay of more than two years, as Defendants claim has occurred in the instant case, is completely unjustifiable.

8

Further, a delay in processing Plaintiff's application for adjustment of status that is almost three times the normal processing time is also unreasonable.

49. Given Plaintiff's lifetime involvement in civic engineering projects and public safety, both in the U.S. and abroad, Defendants' failure to complete security checks borders on the absurd, and is clearly unreasonable.

50. Because Defendants have a purely ministerial duty under the law to complete security checks and adjudicate Plaintiff's application for adjustment of status within a reasonable time, and have utterly failed, or refused, to do so, a Writ of Mandamus is proper to compel Defendants to perform their duty to adjudicate Plaintiff's application to avoid further harm to Plaintiff.

## PRAYER FOR RELIEF

51. WHEREFORE, in view of the arguments and authority noted herein, Plaintiff respectfully prays that the Defendants be cited to appear herein and that, upon due consideration, the Court enter an order:

    a. granting Plaintiff a Writ of Mandamus requiring Defendants to complete security checks and adjudicate Plaintiff's application for adjustment of status within 90 days;
    b. awarding Plaintiff reasonable attorney's fees; and
    c. granting such other relief at law and in equity as justice may require.
    d. It is further requested that the Court retain jurisdiction over this matter to ensure Defendants' compliance with this Court's order.

Respectfully submitted,

Daniel B. Lundy, Esq.
Barst & Mukamal LLP
2 Park Avenue
New York, NY 10016
(212) 686-3838